IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TERESA SPRAGUE, | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 4:17-cv-00874-O |
| v. | § | |
| | § | |
| KROGER TEXAS L.P., | § | |
| | § | |
| Defendant | § | |

# DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND MOTION TO DISMISS

Defendant Kroger Texas L.P. ("Kroger"), by its attorneys, Cozen O'Connor, P.C., hereby submits its Motion to Enforce Settlement Agreement and Motion to Dismiss. In support of these Motions, Kroger would respectfully show the Court the following:

## I.
## INTRODUCTION AND FACTS

1.	Plaintiff Teresa Sprague ("Plaintiff") filed suit against Kroger alleging violations of the Americans with Disabilities Act, as amended ("ADA"), and the Family Medical Leave Act ("FMLA"). For the last three (3) months, the parties have been engaged in settlement negotiations attempting to resolve their differences (Doc. 23 at 1, 2) (requesting joint continuance to "continue settlement discussions.").

2.	On September 10, 2018, the parties attended mediation at the offices of Beth Krugler (Doc. 29, ADR Summary). Plaintiff's husband, her attorney, and Plaintiff attended the mediation on her behalf (*Id*.). Kroger was represented by the undersigned attorney and its Total Rewards Associate Relations Manager, Charles Golightly (*Id*.).

3.      Throughout the mediation, the parties negotiated various terms and conditions of the resulting Settlement Agreement and Release ("Release") (*See* Exhibit A).[1]  Specifically, and in addition to standard terms and conditions of the Release, Kroger and Plaintiff negotiated and agreed upon the following specific terms to include in the Release: (1) the amount of consideration for her lost wages; (2) the amount of consideration for her alleged non-economic damages; (3) Kroger's non-admission of liability; (4) specific provisions pertaining to her vested retirement benefits; and numerous exceptions to the terms of the confidentiality provision allowing Plaintiff to discuss her (5) alleged injuries sustained while during her employment; (6) the medical treatment she received in connection with those alleged injuries; (7) the qualifications of her medical providers connected to her employment with Kroger; (8) the causation of her alleged injuries; (9) the alleged circumstances of her resignation; (10) Kroger's policies and procedures included in its Employee Handbook; and (11) allegations relating to her employment at Kroger. (*See* Exhibit A at ¶¶ 2, 3, 4, 5).

4.      Upon information and belief, the Plaintiff entered into a voluntary and separate agreement with her attorney wherein they agreed to a specific apportionment and distribution of the proposed and agreed-to settlement funds.

5.      At the end of the mediation, the parties reached an agreement on all terms and conditions negotiated throughout the day. Rather than execute a memorandum of understanding, the parties took the time to delineate the provisions of their agreement into the Release.

6.      The terms and conditions of the parties' agreement were combined into the Release which was signed by Mr. Golightly on behalf of Kroger and by Plaintiff. (*See* Exhibit A).  These terms and conditions expressly included statements that "THIS AGREEMENT HAS BEEN

---

[1] Because the parties agreed to confidentiality regarding the Release, it has been submitted to this Court under seal.

ENTERED INTO VOLUNTARILY AND NOT AS A RESULT OF COERCION, DURESS OR UNDUE INFLUENCE" and Plaintiff "HAS ENTERED INTO THIS AGREEMENT KNOWINGLY, VOLUNTARILY, AND WITHOUT THREAT OR DURESS." (*See* Exhibit A at ¶¶ 15-16). Below this language and above the signature block, the Plaintiff added the following language when she signed the Release: "under duress by my attorney, husband and mediator." (*See* Exhibit A at 7).

7. The undersigned attorney is not aware of any threats, either expressed or implied, or improper coercion against the Plaintiff at any time throughout the mediation. The undersigned attorney is not aware of any coercion or other undue influence forming the basis of Plaintiff's claim of "duress." Further, Plaintiff does not accuse Kroger or its attorney of any impropriety whatsoever in connection with the Release. Indeed, the parties did not have a joint session, and Plaintiff was never in the same room with either Mr. Golightly or the undersigned attorney throughout the mediation. The parties regularly communicated through Plaintiff's attorney or the mediator.

8. On September 18, 2018, Plaintiff's counsel received the negotiated settlement funds according to the expressed terms of the Release (*See* Exhibit B at 1). Accordingly, Kroger has complied with all the material terms of the Release.

9. The same day, on September 18, 2018, Plaintiff's counsel informed Kroger he was unable to execute an Agreed Motion to Dismiss with prejudice, pursuant to the express terms of the executed Release, because Plaintiff "does not authorize the filing on the agreed motion to dismiss." (*See* Exhibit B at 1).

10. In a final effort to avoid this unnecessary Motion, Kroger reached out to Plaintiff to again try to resolve this dispute without Court intervention. In response, Plaintiff "informed [her attorney] that she does not intend to honor the agreement but wants it set aside." (*See* Exhibit C at 1).

## II.
## STANDARD OF REVIEW

"[A] district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). The ultimate decision to grant a motion to enforce a settlement agreement is reviewed for abuse of discretion. *See Del Bosque v. AT & T Advert., L.P.,* 441 F. App'x 258, 260 (5th Cir. 2011); *Deville v. United States*, 202 Fed.Appx. 761, 762 (5th Cir. 2006) (unpublished); *Schexnayder*, 36 F.3d at 450. "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Del Bosque*, 441 F. App'x at 260 quoting *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 310 (5th Cir. 2008).

## III.
## ARGUMENTS & AUTHORITIES

A. **Settlement Agreements Under Federal Law**

In the absence of a controlling statute governing the release of federal employment claims, the enforceability of a settlement agreement is governed by federal law. *See Del Bosque*, 441 F. App'x at 260 (Title VII); *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981); *Simon v. Barrett Steel Energy Prod., Inc.*, No. CV H-17-3831, 2018 WL 2010300, at *3 (S.D. Tex. Apr. 30, 2018) (ADA). Under federal law, settlement agreements are contracts. *See Guidry v. Halliburton Geophysical Servs., Inc.,* 976 F.2d 938, 940 (5th Cir. 1992); *see also E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (holding a settlement agreement

4

need not be reduced to writing to be enforceable). A contract requires an offer, acceptance, and a meeting of the minds on all essential terms. *Ibe v. Jones,* 836 F.3d 516, 524 (5th Cir. 2016). A meeting of the minds on all essential terms of a settlement agreement is generally present "where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *See In re Deepwater Horizon*, 786 F.3d 344, 357 n.26 (5th Cir. 2015). "A district court may exercise its discretion to enforce a settlement agreement where one party to a suit has initially agreed to a settlement but later refused to execute a formal agreement reciting the terms of the settlement." *Chen v. Highland Capital Mgmt., L.P.,* No. 3:10-CV-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (Fitzwater, J.) *quoting Weaver v. World Fin. Corp. of Tex.*, 2010 WL 1904561, at *2 (N.D.Tex. May 12, 2010) (Fish, J.).

In determining whether a release was knowingly and voluntarily executed, the Fifth Circuit has adopted a "totality of the circumstances" approach. *See Smith v. Amedisys Inc.,* 298 F.3d 434, 441 (5th Cir. 2002); *O'Hare v. Global Natural Res.,* 898 F.2d 1015, 1017 (5th Cir. 1990); *see also Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 10 (1st Cir. 1997) (finding release of ADA claim voluntary under federal common law based on the "totality of circumstances."). The ADA expressly favors "alternative dispute resolution, including settlement negotiations [and] mediation…to resolve disputes arising under this chapter." *See* 42 U.S.C. § 12212. Under federal law, "[o]ne who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity." *Del Bosque v. AT & T Advert., L.P.,* 441 F. App'x 258, 261 (5th Cir. 2011) *quoting Mid–South Towing Co. v. Har–Win, Inc.,* 733 F.2d 386, 392 (5th Cir. 1984). In other words, plaintiff must demonstrate that the Release "was invalid because of fraud, duress, material mistake, or some other defense." *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002); *see also Lozano v. Metro. Transit Auth. of Harris Cty.*, No. CV H-14-1297, 2016 WL

5

3906295, at *3 (S.D. Tex. July 19, 2016), *appeal dismissed,* No. 16-20519, 2016 WL 10519037 (5th Cir. Nov. 3, 2016).

B. **Plaintiff Was Not Coerced Into Signing Settlement Agreement**

Plaintiff's 11th hour insertion of a single line alleging "duress" by her attorney, mediator and husband does not invalidate the Settlement Agreement for three reasons: (1) Plaintiff has not alleged any coercion by the opposing party, i.e. the only other party to the Release; (2) courts in this jurisdiction have regularly enforced settlement agreements despite claims of coercion by their representing attorney; and (3) there was a prior meeting of the minds as to all material terms constituting a valid, enforceable settlement agreement prior to signing the Release, as evidenced by Plaintiff's execution of a predicate agreement with her attorney wherein they voluntarily agreed to a specific distribution of settlement funds.

To establish duress under federal common law, a party must show that: (1) she involuntarily accepted the other party's terms, (2) the circumstances permitted no other alternative, and (3) the circumstances were the result of the other party's coercive acts. *United States v. Reed,* No. 3:12-CV-4254-BH, 2014 WL 462620, at *9 (N.D. Tex. Feb. 5, 2014) *quoting N. Star Steel Co. v. United States,* 477 F.3d 1324, 1334 (Fed.Cir.2007) (citations omitted); *see also* Restatement (Second) of Contracts §§ 175(1) (duress occurs when "a party's manifestation of assent is induced by an improper threat *by the other party* that leaves the victim no reasonable alternative"), 177 (invalidating assent procured through "undue influence *by the other party*."). (emphasis added).

1. **No Duress or Coercion by Kroger or its Attorney.**

Plaintiff has not alleged any coercion by the opposing party, i.e. the only other party to the Release. *See Del Bosque,* 441 F. App'x at 261 (analyzing duress claims against Restatement (Second) of Contracts §§ 174, 175 & 177 before enforcing settlement of Title VII litigation); *F.D.I.C. v. White*, 76 F. Supp. 2d 736, 739 (N.D. Tex. 1999) (rejecting duress claims where "no

6

overt or subtle threats were ever made by the [opposing party] or the mediator."); *Reed v. Gallegos*, No. CIV.A. C-07-190, 2008 WL 2714082, at *4 (S.D. Tex. July 9, 2008) (denying claims of duress and enforcing settlement of §1983 claims because "plaintiff cannot prevail without showing that [defendant] officials harassed him until his will to resist was broken, leading him to settle his claims involuntarily."); *see also Menaged v. City of Jacksonville Beach, Fla.*, No. 3:11-CV-586-J-12JBT, 2013 WL 461999, *3 (M.D. Fla. Jan. 14, 2013) (enforcing settlement of § 1983 claims where "Plaintiff makes no assertion that Defendants intentionally caused, or even knew about, her distress. She states no facts showing any action taken by Defendants to improperly influence or coerce her into settling."); *Shepard v. Fla. Power Corp.,* No. 8:09-CV-2398-T-27TGW, 2011 WL 1465995, at *3 (M.D. Fla. Apr. 18, 2011) ("…only improper influence from the other contracting party suffices to set aside a settlement agreement on the basis of fraud, duress or coercion [and] Plaintiff does not allege any improper influence by any person other than his former attorney.").

Here, Plaintiff's has specifically excluded the opposing party from the vague mention of duress in the Release. She has not alleged Kroger played any role or otherwise participated in anyway suggesting impropriety. Plaintiff has not alleged she was physically threatened by Kroger.[2] Throughout the mediation, Plaintiff "had ample opportunity to state that she was ill or under duress, but did not do so," and "speculative" fears are insufficient to establish duress. *See Lopez v. Kempthorne*, No. CIV.A. H-07-1534, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010) (enforcing Title VII settlement agreement over Plaintiff's claims of duress). It seems axiomatic that "[i]nstead of being a case about incapacity or duress, this seems to be a case where [plaintiff]

---

[2] The party's assent must have actually been induced by the improper threat. *See* Restatement (Second) of Contracts, § 175, comment c.; *Reed v. Gallegos,* No. CIV.A. C-07-190, 2008 WL 2714082, at *2 (S.D. Tex. July 9, 2008) (rejecting claim of duress where no evidence the assent "resulted from any 'coercive acts' or 'improper threats' by part of [opposing party]."); *see also Bank of El Paso v. T.O. Stanley Boot Co.*, 809 S.W.2d 279, 289-90 (Tex.App.1991) (absent imminent threat, no duress as a matter of law).

7

expected the mediation to give her a feeling of closure that she did not get." *Del Bosque*, 441 Fed.Appx. at 262. Accordingly, Plaintiff's exclusion of Kroger from any allegation of coercion or duress is fatal to her establishing that her execution of the Release with Kroger was not voluntary.

### 2. Courts Regularly Reject Plaintiffs' Claims of Coercion against their Attorneys.

Courts in this jurisdiction have regularly enforced settlement agreements despite claims of coercion by the plaintiff's attorney. For example, in *Deville v. US*, the Fifth Circuit rejected plaintiff's contention he was under duress and "coerced into settling through the efforts of his attorney [when the attorney] physically prevented him from [leaving] and verbally pressured him to settle." 202 F. App''x 761, 762 (5th Cir. 2006). Similarly, in *Del Bosque v. AT&T*, the Fifth Circuit rejected plaintiff's claims of duress where she felt pressured to settle her Title VII claims because "everybody wanted it done" and she "had insufficient time to review the agreement…" 441 Fed.Appx. at 262; *see also Lozano v. Metro. Transit Auth. of Harris Cty.*, No. CV H-14-1297, 2016 WL 3906295, at *13 (S.D. Tex. July 19, 2016), *appeal dismissed*, No. 16-20519, 2016 WL 10519037 (5th Cir. Nov. 3, 2016) (rejecting claim plaintiff's "attorneys used 'fraud, coercion, and deception' to pressure [plaintiff] into settling the [Title VII] case."). Courts in other jurisdictions have similarly rejected claims of coercion by their own attorneys. *See e.g., Shepard v. Fla. Power Corp.,* No. 8:09-CV-2398-T-27TGW, 2011 WL 1465995, at *3 (M.D. Fla. Apr. 18, 2011) (plaintiff's claim "he was coerced by his attorney into signing an unfair settlement" rejected as insufficient because "mere dissatisfaction with the advice of his attorney cannot support a finding that his agreement to settle and release his claims was not knowing or voluntary.").

### 3. Prior Meeting of the Minds Moots Last Minute Addition to Release.

Plaintiff's last-minute duress statement to the Release is moot because there was a prior meeting of the minds as to all material terms constituting a valid, enforceable agreement. A

meeting of the minds on all essential terms of a settlement agreement is generally present "where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *See In re Deepwater Horizon*, 786 F.3d 344, 357 n.26 (5th Cir. 2015). Acceptance of an offer occurs when there is "manifestation of assent that occurs in any reasonable manner." *See Chen v. Highland Capital Mgmt.,* L.P., 2012 WL 5935602, *2 (N.D. Tex. Nov. 27, 2012) (Fitzwater, J.).

On September 10, 2018, prior to the execution of the Release, the parties orally agreed at mediation to a specific monetary amount constituting a settlement payment in exchange for a release of the claims asserted in this litigation. This predicate agreement is evidenced by the fact Plaintiff executed a separate, written agreement regarding the distribution of this settlement payment with her attorney. Accordingly, irrespective of the Plaintiff's last minute allegation of duress against non-parties to the litigation and Release, there still exists a binding, enforceable settlement agreement which resolves the claims pending in the instant litigation. *See Fulgence*, 662 F.2d at 1209 ("If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement."); *Chen v. Highland Capital Mgmt., L.P.,* No. 3:10-CV-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012) (Fitzwater, J.); *Weaver v. World Fin. Corp. of Tex.*, 2010 WL 1904561, at *2 (N.D.Tex. May 12, 2010) (Fish, J.).

C. **Kroger Seeks Recovery of its Attorneys' Fees & Costs**

The Court has the inherent power to award attorneys' fees in connection with a motion to enforce a settlement agreement, among other sanctions. *See F.D.I.C. v. White*, 76 F. Supp. 2d 736, 739-740 (N.D. Tex. 1999). Further, Plaintiff agreed to "pay all of Kroger's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims" in the event she attempts to pursue any claim settled by the Release (*See* Exhibit A at ¶ 6(B)). The time and expense

9

incurred in connection with the preparation and drafting of this Motion is unnecessary and regrettable.[3] However, Plaintiff's conduct has left Kroger no choice but to seek recovery of its attorneys' fees and costs.

**WHEREFORE**, Defendant Kroger respectfully requests the Court enforce the agreement to settle and/or Release entered by the Parties September 10, 2018, dismiss Plaintiff's pending court claims with prejudice, while ordering distribution of settlement funds currently held in trust by Plaintiff's attorney, grant Kroger its attorneys' fees and costs against Plaintiff for having to file this Motion and enforce the contractual settlement agreement which she has now breached; and grant Kroger any such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ *Aaron Holt*
A. Martin Wickliff, Jr.
Texas Bar No. 21419900
Aaron A. Holt
Texas Bar No. 24058545
COZEN O'CONNOR, P.C.
LyondellBasell Tower
1221 McKinney Street, Suite 2900
Houston, TX  77010
Telephone:  (713) 750-3110
Facsimile:  (832) 214-3905
awickliff@cozen.com
aholt@cozen.com

ATTORNEYS FOR DEFENDANT

---

[3] Kroger appraised Plaintiff of its intention to seek recovery of attorneys' fees in the event it was forced to file this Motion. Plaintiff simply responded that "she does not intend to honor the agreement but wants it set aside." (*See* Exhibit C at 1).

## CERTIFICATE OF SERVICE

On the 20th day of September 2018, a true and correct copy of *Defendant's Motion to Enforce Settlement Agreement and Motion to Dismiss* was duly served upon all parties entitled to notice via the Court's CM/ECF system:

Matthew R. Scott
Texas Bar No. 00794613
matt.scott@scottperezlaw.com
Javier Perez
Texas Bar No. 24083650
javier.perez@scottperezlaw.com
SCOTT PEREZ LLP
Founders Square
900 Jackson Street, Suite 550
Dallas, Texas 75202
214-965-9675
214-965-9680 - facsimile

/s/ *Aaron Holt*
Aaron A. Holt