**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TERESA SPRAGUE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:17-cv-00874-O** |
| | § | |
| **KROGER TEXAS, LP,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Kroger Texas, LP's ("Kroger") Motion to Enforce Settlement Agreement and Motion to Dismiss (ECF No. 31) filed on September 20, 2018 ("the Motion"). By Order dated October 31, 2018 (ECF No. 37), United States District Judge Reed O'Connor referred the Motion and all related responses, replies, briefs in support, appendices, etc. to the undersigned for hearing, if necessary, and determination or recommendation.

To that end, the undersigned conducted an evidentiary hearing in this matter that took place on November 15 and December 18, 2018. The undersigned has additionally reviewed Kroger's Motion for Leave to File Under Seal (ECF No. 32) filed on September 20, 2018; Plaintiff Teresa Sprague's ("Sprague") Sealed Response in Opposition to Kroger's Motion (ECF No. 33) filed on September 20, 2018; Kroger's Reply (ECF No. 34) filed on September 27, 2018; the Court's Order scheduling an evidentiary hearing on November 15, 2018 (ECF No. 38) entered on November 9, 2018; the Court's Order requiring supplemental briefing on the issues raised at the evidentiary hearing (ECF No. 41) entered on November 15, 2018; Kroger's Motion to Compel Beth Krugler's Testimony (ECF No. 42) filed on November 27, 2018; the Court's Order reconvening the evidentiary hearing on December 18, 2018 (ECF No. 44) entered on November 28, 2018; Kroger's

Supplemental Brief in Support of its Motion (ECF No. 45) filed on November 28, 2018; Sprague's Supplemental Briefing (ECF No. 46) filed on November 28, 2018; Kroger's Supplemental Brief in Support of its Motion (ECF No. 55) filed on December 28, 2018; and Sprague's Argument in Support of her Opposition to Kroger's Motion (ECF No. 57) filed on January 11, 2019.

After considering the pleadings, applicable law, and evidence admitted and arguments made at the evidentiary hearing in this matter, the undersigned recommends that United States District Judge Reed O'Connor **GRANT IN PART** Kroger's Motion to Enforce Settlement Agreement and Motion to Dismiss (ECF No. 31), enforcing the Settlement Agreement and Release executed by Sprague and Kroger on December 18, 2018, ordering distribution of the settlement funds provided in the Agreement to Sprague, and dismissing Sprague's claims **WITH PREJUDICE**, with each party bearing the costs and attorney's fees incurred by that party.

## I.    BACKGROUND

In this employment discrimination case, Sprague brings harassment, discrimination, and retaliation claims against Kroger under Chapter 21 of the Texas Labor Code, harassment and discrimination claims under 42 U.S.C. § 12112, and retaliation and Family Leave and Medical Act interference claims under 42 U.S.C. § 12203 and 29 U.S.C. § 2615, respectively. (ECF No. 17).

On September 10, 2018, Sprague and Kroger attended mediation. (ECF No. 33 at 8). The participants in the mediation were: Sprague; her husband; her then-attorney, Matt Scott ("Scott"); Kroger's attorney, Aaron Holt ("Holt"); Kroger's company representative, Charles Golightly ("Golightly"); and the mediator, Beth Krugler ("Krugler"). (*Id.*; *see also* ECF No. 31 at 1). The mediation lasted from 9:30 a.m. to approximately 7:00 p.m. (*Id.*). At the end of the mediation, Holt drafted a Settlement Agreement and Release (the "Agreement"). (ECF No. 32 at 5-11). The Agreement is in writing, signed by Sprague and Golightly, on behalf of Kroger, and filed under

2

seal as part of the record in this case. (*Id.*). The Agreement states among other things that Kroger will "provide . . . certain compensation to which [Sprague] is not otherwise entitled" in exchange for her knowing and voluntary release of "any and all claims . . . asserted against Kroger arising out of or relating in any way to any acts, circumstances, facts, transactions, omissions, or other subject matters, based on facts occurring prior to the date" of the Agreement. (*Id.* at 5, 7).

The Agreement also contains the: 1) parties' names and defined terms; 2) amount of the settlement payment; 3) detailed breakdown of the settlement payment and how Kroger arrived at that monetary value; 4) intent and effect of the Agreement; 5) fully elaborated "Releases and Acknowledgements" clause; 6) "Non-Admission" of Kroger's liability regarding Sprague's claims; 7) "Confidentiality" clause; 8) "Covenant Not to Sue" and voluntary dismissal of Sprague's claims against Kroger; 9) "Complete Release" clause; and 10) "Voluntary Release" clause. (*Id.* at 5-11).

The Agreement also states in capital letters that "SPRAGUE REPRESENTS THAT SHE HAS CAREFULLY READ AND FULLY UNDERST[ANDS] THE PROVISIONS OF THIS AGREEMENT (OR HAD THEM READ AND EXPLAINED TO HER) AND HAS ENTERED THIS AGREEMENT KNOWINGLY, VOLUNTARILY, AND WITHOUT THREAT OR DURESS." (*Id.* at 11). The Agreement states that Sprague would "pay all of Kroger's costs and expenses (including reasonable attorneys' fees) related to the defense of any claims" that she may pursue against Kroger after the settlement. (*Id.* at 9; ECF No. 31 at 9-10).

Sprague signed and dated the Agreement on September 10, 2018. (ECF No. 32 at 11). Above her signature, she handwrote, "Under Duress by my attorney, husband, & mediator." (*Id.*). Sprague informed Scott less than twenty-four hours after signing the Agreement that she would not fulfill her contractual obligations under the Agreement. (ECF No. 33 at 10).

In its Motion (ECF No. 31), Kroger asserted that Sprague was not coerced into signing the Agreement, did not sign the Agreement under duress, and that she was not extorted. (*Id.*). Kroger also asserted that Scott "received the negotiated settlement funds according to the expressed terms of the" Agreement. (*Id.* at 14). Kroger requested an award of attorneys' fees and costs related to the filing of its Motion. (*Id.* at 9-10). Scott agreed with Kroger's arguments and stated that he did not believe that "there is [a] legal basis on which to invalidate the [A]greement . . . [and that he could not] file a document he knows or believes to be frivolous or groundless." (ECF No. 33 at 10). He also agreed with Kroger's account of what occurred at the mediation. (*Id.* at 8-10).

Sprague has now requested that the Court set aside the Agreement due to coercion, duress, and extortion. (*Id.* at 15-17). Specifically, Sprague alleged that Scott "bullied" and verbally pressured her, and that Krugler pressured her to sign the Agreement. (*Id.*). She also alleged that her breast cancer interfered with her ability to participate in and understand the mediation and what she was signing. (*Id.*). Sprague alleged that because of her cancer and medical treatment, she becomes tired after "6 or 7 hours" and is "not at [her] best" after eight hours. (*Id.* at 16). Despite her allegation that she was tired during the mediation, she recalled a "lengthy conversation with the 'mediator,' attorney Beth Krugler." (*Id.* at 15). Sprague alleged that she did not need to be "toughened up" by Scott during mediation because she is "tough enough" after enduring medical treatment for her cancer. (*Id.* at 16). Sprague stated that while she is "honest, polite, and kind," this "does not mean that [she is] weak." (*Id.*).

Additionally, Sprague alleged that she was coerced into signing the Agreement by Scott and Krugler when they "used [her] concern for [her] husband['s]" heart problems against her. (*Id.*). Also, Scott allegedly informed Sprague that if she did not settle her case during mediation, he would reassign it to a new and inexperienced attorney in his office. (*Id.*). Scott allegedly informed

her that he would also change the pay structure of his compensation if she did not settle the case. (*Id.*). Finally, Sprague stated that she "wrote on the agreement, above [her] signature, that [she] was signing under duress in the hope that [Kroger's] attorney . . . would stand up and say, Mrs. Sprague obviously does not want to sign, she just wants to leave." (*Id.* at 16-17).

To support her extortion claim against Scott and Krugler, Sprague relied upon the same underlying facts for her coercion and duress claims against them. (*Id.* at 15-17). As to Holt, Sprague alleged that he extorted her at mediation by not objecting to her signing the Agreement even though she handwrote that she was signing under duress. (*Id.* at 17). According to Sprague, because Holt acquiesced in the face of "duress," he extorted her signature on the Agreement. (*Id.*).

The undersigned ordered the parties to attend an evidentiary hearing on November 15, 2018. (*See* ECF No. 38). Present at that evidentiary hearing were Sprague; Scott; Scott's previous assistant, Pam Lane; Holt; and Golightly. (*See* ECF No. 39). Sprague testified that she opposed Kroger's Motion because she acted under duress when she signed the Agreement and was coerced into signing the Agreement due to exhaustion from the mediation process, persuasion from Krugler, "threats" from Scott, and because she was trying to spare her husband from further mediation given his health problems. She also testified that she signed and handwrote on the Agreement that she was acting "Under Duress by my attorney, husband, & mediator" (ECF No. 32 at 11) in hopes that Holt would object on her behalf and end the mediation. Sprague further testified that Scott threatened her by stating that as the parties got closer to reaching a settlement, he would "beat up on her" to finalize the Agreement. Sprague clarified that she did not believe that he would physically harm her, but that he was speaking figuratively. Sprague ended her testimony by describing similar bullying or pressuring incidents that occurred at the mediation and were also the subject of her pleadings. (*See* ECF No. 33 at 15-17).

Golightly, Kroger's company representative at the mediation, testified that he did not believe that Sprague acted under duress or that she was coerced into signing the Agreement because he and Holt did not meet with her at the mediation and were never in the same room with her. He also testified that he believed that the parties reached a settlement through the efforts of Krugler. Golightly described the events as follows: Krugler approached Holt and him with a monetary amount that Sprague agreed to accept to settle the case. He and Holt discussed the offer, and Golightly accepted the offer on behalf of Kroger. Holt then drafted the Agreement. Golightly testified that he believed the Agreement was finalized when he and Sprague signed it.

Krugler did not testify at the evidentiary hearing on November 15, 2018, and on November 28, Kroger filed a Motion to Compel Krugler's testimony. (ECF No. 42). Judge O'Connor referred the Motion to the undersigned for determination or recommendation by Order entered that same day. (ECF No. 43). The undersigned entered an Order reconvening the evidentiary hearing for the limited purpose of receiving Krugler's testimony, either live or by deposition. (ECF No. 44). Krugler objected to that Order on December 12, 2018 (ECF No. 49), and Judge O'Connor overruled her objections. (ECF No. 50).

The evidentiary hearing resumed on December 18, 2018. Krugler testified that she explained to Sprague her standard mediation instructions for approximately thirty minutes before the mediation began. Krugler described Sprague as nervous and uncomfortable, but that her disposition was normal for a litigant new to mediation. Krugler testified that Sprague appeared to understand what was happening during the mediation.

Krugler testified that in the beginning of the mediation, Sprague expressed that she did not want to settle. Krugler testified that Sprague was unhappy about the process throughout the mediation. According to Krugler, Scott became frustrated during the mediation. Krugler also

testified that she explained to Sprague that Scott was being honest and forthright about the likely outcome of her case if she did not reach a settlement and instead went to trial. Krugler further testified that Sprague and Kroger negotiated, and eventually agreed to, her ability to discuss her grievances about Kroger post-settlement and the specific settlement amount. Krugler disagreed with Sprague's testimony that she agreed to settle with Kroger for that amount because Krugler told her that Kroger would never accept that settlement amount.

Moreover, Krugler testified that it did not appear that Sprague acted under duress or was coerced during the mediation. She testified that she did not observe Sprague being threatened by Holt, Golightly, Scott, or Sprague's husband. Krugler also described Sprague's husband as having a mild demeanor throughout the mediation. She stated that she was concerned for both his and Sprague's health if Sprague did not reach a settlement with Kroger and had to endure a trial.

Krugler testified that the day after the mediation, she returned a phone call that Sprague made to her. Krugler recalled the phone conversation and explained that she may have apologized to Sprague as an act of compassion because Sprague sounded upset and appeared to have "buyer's remorse" following the settlement.

After Krugler's testimony concluded, Sprague made a statement on the record terminating Scott's representation of her and stating that she would represent herself for the remainder of the litigation. She then called Scott to the witness stand. Scott testified that prior to attending the mediation with Sprague, she emailed him a list of what she would require in a settlement with Kroger. Scott disputed Sprague's prior testimony that he submitted this email list to Holt and Golightly prior to the mediation. Scott testified that during the mediation, he informed Sprague that he would "beat on her" as the parties got closer to a settlement amount that he deemed appropriate, but that he was not speaking literally. He also testified that he informed Sprague

during the mediation that she was likely to lose at trial if she did not settle because she would be an unsympathetic witness. He testified that at some point during the mediation he became frustrated and tried to leave because he believed the parties had reached an impasse. Scott testified that Sprague met separately with Krugler at Krugler's request. He also testified that he believed Sprague wanted to settle her case when Krugler showed him a document, signed by Sprague, stating the amount of money that she was willing to accept in settlement of the case.

Scott further testified that Sprague appeared to understand the Agreement she signed because he reviewed it with her page-by-page before she signed it. Scott testified that although Sprague cried as she signed the Agreement, she had been emotional throughout his entire representation of her, so her actions were not alarming. Despite Sprague's emotional signing of the Agreement, Scott testified that she was never coerced, extorted, or under duress throughout the mediation. Scott finally testified that Sprague appeared to understand the events that took place during mediation.

## II.      LEGAL STANDARD

### A.  Requirements to Enforce a Settlement Agreement

"A district court may exercise its discretion to enforce a settlement agreement . . . ." *Weaver v. World Fin. Corp. of Texas*, No. 3:09-CV-1124-G, 2010 WL 1904561, at *1 (N.D. Tex. May 12, 2010) (citing *Daftary v. Metro. Life Ins. Co.*, 136 F.3d 137, at *1 (5th Cir. 1998)) (per curiam). The Court has both federal question and diversity of citizenship jurisdiction over the claims in the instant case. (*See* ECF No. 6). A court exercising diversity jurisdiction applies the law of the state in which the settlement agreement was negotiated and is to be performed. *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987). "More specifically, the enforceability of a settlement agreement in a diversity case tried in a federal district court in Texas is governed by the

provisions of Rule 11 [of the] Texas Rules of Civil Procedure ('Texas Rule 11')." *Borden v. Banacom Manufacturing and Marketing, Inc.*, 698 F. Supp. 121, 123 (N.D. Tex. 1988). Under Texas Rule 11, "a settlement agreement is enforceable only if it is (1) 'in writing, signed[,] and filed with the papers as part of the record' or (2) 'made in open court and entered of record.'" *Williamson v. Bank of N.Y. Mellon*, 947 F. Supp. 2d 704, 707 (N.D. Tex. 2013) (citing Tex. R. Civ. P. 11; *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 910 (5th Cir. 2000)).

A court exercising federal question jurisdiction applies federal law to the enforcement of settlement agreements. *Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984); *Henry v. BG of Dallas Corp.*, No. 3:13-CV-2060-BF, 2014 WL 10919570, at *1 (N.D. Tex. Oct. 8, 2014). Federal law treats a settlement agreement as a contract. *Guidry v. Halliburton Geophysical Servs., Inc.*, 976 F.2d 938, 940 (5th Cir. 1992); *Henry*, 2014 WL 10919570 at *1 (quoting *Chen v. Highland Capital Mgmt., L.P.*, No. 3:10-CV-1039-D, 2012 WL 5935602, at *2 (N.D. Tex. Nov. 27, 2012)). For a valid contract to exist under federal law, there must be an offer, acceptance, consideration, essential terms, and a meeting of the minds among the parties. *Johnson v. BP Exploration & Prod.*, 786 F.3d 344, 355-59 (5th Cir. 2015). Generally, there is a meeting of the minds among the parties on "all of the material terms of settlement where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims." *Id.* at n.26 (quoting *Nicholas v. Wyndham Int'l, Inc.*, No. 2001-147, 2007 WL 4811566, at *3-4 (D.V.I. Nov. 20, 2007)). Thus, the main difference between the Texas and federal standards is that "[f]ederal law does not require settlement agreements to be reduced to writing." *E.E.O.C. v. Phillip Servs. Corp.*, 635 F.3d 164, 167 (5th Cir. 2011) (citing *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981)) (per curiam).

**B.  Whether Settlement Agreement was Entered Knowingly and Voluntarily**

To determine whether a settlement agreement was knowingly and voluntarily executed, the Fifth Circuit has adopted a "totality of the circumstances" approach. *Smith v. Amedisys Inc.*, 298 F.3d 434, 441 (5th Cir. 2002) (citing *O'Hare v. Global Natural Res.*, 898 F.2d 1015, 1017 (5th Cir. 1990)). Once the employer has established that the employee "signed a [settlement agreement] that addresses the claims at issue, received adequate consideration, and breached the release . . . [i]t is then incumbent upon the former employee to demonstrate that the release was invalid because of fraud, duress, material mistake, or some other defense." *Ollie v. Plano Indep. Sch. Dist.*, 323 Fed. App'x. 295, 297 (5th Cir. 2009) (internal quotations omitted) (quoting *Smith*, 298 F.3d at 441). The following factors are relevant in determining whether an employee has established a defense to the validity of the release:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* (quoting *O'Hare*, 898 F.2d at 1017).

**III.    ANALYSIS**

**A.  Kroger's Motion to Enforce the Agreement and Motion to Dismiss Should be Granted because the Agreement is Valid under Texas and Federal Standards.**

*1.   The Agreement is Valid under Texas Law.*

The Agreement is written, signed, and filed under seal with the papers as part of the record. (*See* ECF No. 32 at 5-11). Therefore, it is valid under Texas law in the absence of any legal defense. *Williamson*, 947 F. Supp. 2d at 707 (citing Tex. R. Civ. P. 11; *Estate of Martineau*, 203 F.3d at 910).

2.  *The Agreement between Sprague and Kroger is Valid under Federal Law*.

The parties do not agree whether there was a meeting of the minds when Sprague signed the Agreement and handwrote that she was "[u]nder [d]uress by [her] attorney, husband, & mediator." (ECF No. 32 at 11). This dispute goes to the heart of whether a valid settlement agreement exists between Sprague and Kroger under federal law. If there was no meeting of the minds between Sprague and Kroger at the time they entered the Agreement, then it is invalid.

a.  *Kroger Extended a Valid Offer to Sprague in the Agreement*.

Kroger extended a valid offer to Sprague by agreeing to "provide . . . certain compensation to which she is not otherwise entitled" in exchange for her knowing and voluntary release of "any and all claims . . . asserted against Kroger arising out of or relating in any way to any acts, circumstances, facts, transactions, omissions, or other subject matters, based on facts occurring prior to the date" of the Agreement. (*Id.* at 5, 7).

b.  *Sprague Accepted Kroger's Offer when She Signed the Agreement "Under Duress."*

Sprague accepted Kroger's offer when she signed the Agreement even though she handwrote that she was under duress by Scott, Krugler, and her husband. (*Id.* at 11). A reluctant or "grumbling" acceptance, as Kroger points out, is still an acceptance. *See e.g. Martin v. NAES Corp.*, No. 6:12-CV-00058, 2013 WL 5945655, at \*5 (W.D. Va. Nov. 6, 2013), *aff'd*, 583 Fed. App'x. 162 (4th Cir. 2014) (internal quotations omitted) ("[p]laintiff has never provided evidence that [defendant] in any way improperly threatened or coerced him into signing the transfer offer letter . . . Without any such coercion, there can be no duress, and thus Plaintiff's 'Signed under Duress' notation is nothing more than an expression of dissatisfaction with the paperwork he nevertheless signed"); *Bell v. General Motors*, No. 11-10905, 2012 WL 2680909, at \*3 (E.D. Mich. July 6, 2012) (granting enforcement of settlement despite "under duress notation" where

there was "no evidence that [plaintiff] was ever threatened in such a way that overcame her free will"); *Parker v. Key Plastics, Inc.*, 68 F. Supp. 2d 818, 826 (E.D. Mich. 1999) (granting enforcement of settlement despite "under duress notation" where duress claimed was "nothing more than economic pressure [which is] insufficient to demonstrate unlawful coercion"); *Deluca v. Bear Sterns & Co.*, 175 F. Supp. 2d 102, 114, 116 (D. Mass. 2001) (granting enforcement of settlement despite "under duress" notation where "[plaintiff] points to no action by [defendant's] employee which overcame her will in particular . . . [plaintiff's] notation on the Agreement [is] such a 'grumbling acceptance'"); *Mass. Hous. Fin. Agency v. Whitney House Assocs.*, 638 N.E.2d 1378, 1380 (Mass. App. Ct. 1994) ("[A] comment, purported clarification, or expression of dissatisfaction appended to an acceptance . . . constitutes an acceptance nonetheless").

Although the Fifth Circuit and Texas courts have not addressed this precise issue, the undersigned agrees with the rationale of other federal and state courts that have considered the case of a "grumbling acceptance." The law appears to be well-settled in other jurisdictions that a notation above a signature on an agreement, such as Sprague's notation here, is not evidence of a lack of acceptance of the Agreement or that Sprague signed it under duress. Without additional supporting evidence that Sprague signed the Agreement under duress, her allegations are unavailing. *Deville v. U.S. ex rel. Dept. of Veterans Affairs*, 202 Fed. App'x. 761, 762 (5th Cir. 2006). The Court is entitled to credit the contradictory testimony of other individuals, who were also present at the mediation, over Sprague's testimony. *Id.* at 763; *see also Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985) ("[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous"). Accordingly, Sprague's signature on the Agreement suffices as an acceptance despite her handwritten statement that she acted under duress.

*c.  Sprague and Kroger Exchanged Consideration to Form the Agreement.*

Sprague and Kroger exchanged sufficient consideration to form a valid settlement agreement. "Consideration is defined as 'either a benefit to the promisor or a loss or detriment to the promisee . . . .'" *W. Sur. Co. v. Medsolutions, Inc.*, No. 3:01-CV-2248-P, 2003 WL 251433, at *4 (N.D. Tex. Feb. 3, 2003) (citing *Northern Natural Gas Co. v. Conoco, Inc.*, 986 S.W.2d 603, 607 (Tex. 1999) (internal quotations omitted) (quoting *Receiver for Citizen's Nat'l Assurance Co. v. Hatley*, 852 S.W.2d 68, 71 (Tex. App.—Austin 1993, no writ)). Here, Kroger received the benefit of Sprague knowingly and voluntarily releasing and discharging it from liability for anything occurring before the date of the Agreement. (ECF No. 32 at 7). Sprague received a benefit in the form of the settlement amount and a loss or detriment in that she agreed to relinquish her right to sue Kroger and its agents for claims that arose prior to the Agreement's execution. (*Id.* at 5-7, 9-11). Thus, there was sufficient consideration exchanged between the parties to support a valid settlement agreement.

*d.  Sprague and Kroger Incorporated the Essential Terms into the Agreement.*

Sprague and Kroger included the essential terms necessary to form a valid settlement agreement in the Agreement itself. In fact, a review of the Agreement shows that it includes more terms than have been held necessary for a valid settlement agreement to exist. For example, in *In re Deepwater Horizon*, the Fifth Circuit held that "where the parties have agreed upon the monetary amount of the settlement payment and the fact that plaintiffs will release specific claims," the essential terms of a settlement agreement are generally present. 786 F.3d 344, 357 n.26 (5th Cir. 2015). Because the Agreement includes more than the "essential terms," as defined by the Fifth Circuit, it is valid.

13

*e.   There was No Oral Agreement between the Parties Prior to Execution of the Agreement.*

Kroger asserted that the parties orally agreed to settle this case even if the Agreement is not valid. (ECF No. 9). Kroger is correct that as a general matter of contract law, "parties may enter into an oral contract even though they are contemplating a formal writing." *Scaife v. Associated Air Center Inc.*, 100 F.3d 406, 410 (5th Cir. 1996) (citing *Simmons and Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418 (Tex. 1955)). "The subsequent writing then becomes merely a 'convenient memorial' of the agreement." *Id.* (citing *Cothron Aviation, Inc. v. Avco Corp.*, 843 S.W.2d 260, 263 (Tex. App.—Fort Worth 1992, writ denied)). For that doctrine to apply, however, the factfinder must usually "ascertain whether the parties intended to be bound by the agreement before the agreement was formally executed." *Id.*

Based upon the evidence presented at the evidentiary hearing, the undersigned concludes that the parties always intended a written settlement agreement as opposed to an oral agreement. Both Scott and Holt stated to the Court that they wanted to avoid any disagreement about the settlement's terms and the parties' performance of those terms by drafting a written settlement agreement that was executed by their client or client representative if the case settled at mediation. Holt brought his laptop computer to the mediation for that very purpose. He used his laptop computer to prepare the Agreement. On the facts of this case, the Agreement was not a "convenient memorial" of a previously entered oral agreement. The Agreement was the expression of the parties' intentions to settle this case.

**B.  Sprague was Not Coerced into Signing the Agreement**.

Sprague claimed that she was coerced into signing the Agreement because Scott and Krugler "used [her] concern for [her] husband['s]" heart problems against her. (ECF No. 33 at 16). Sprague also alleged that she was "bullied" by Scott and verbally pressured by Scott and Krugler,

14

and that her cancer interfered with her ability to understand what she was signing. (*Id.* at 15-17). The Fifth Circuit, however, has held that such allegations do not amount to coercion.

The Fifth Circuit held in *Deville* that the plaintiff was not coerced to enter a binding settlement with defendants despite allegations that his lawyer physically restrained him from leaving the mediation, verbally pressured him to enter the settlement, and required him to attend mediation after he underwent knee surgery. 202 Fed. App'x. at 762. In *Deville*, plaintiff tried to set aside the settlement he entered after a day-long mediation with defendants. *Id.* Plaintiff's attorney later testified at a hearing on the motion that he did not physically prevent plaintiff from exiting the mediation and did not intimidate him. *Id.* Plaintiff's attorney further testified that plaintiff knowingly accepted the terms of the settlement. *Id.* The mediator testified that plaintiff understood the issues presented at mediation and remembered discussing with plaintiff that he could leave at any time and did not have to settle. *Id.* Finally, the mediator testified that plaintiff never protested about his knee pain interfering with his ability to participate in the mediation. *Id.* Thus, the Fifth Circuit upheld the district court's decision to enforce the settlement agreement. *Id.* The Fifth Circuit explained that there were differing accounts among the parties as to what occurred at mediation and that the district court did not abuse its discretion in believing the account of events offered by the plaintiff's attorney and the mediator. *Id.*

The facts here are similar. Sprague participated in a day-long mediation and shortly thereafter tried to set aside the Agreement she signed. (ECF No. 33 at 8, 10). Sprague alleged that Scott "bullied" and verbally pressured her, and that Krugler verbally pressured her as well. (*Id.* at 15-16). Sprague stated that she had cancer and that after hours of mediation, she grew tired and did not understand what she was signing when she entered the Agreement. (*Id.*). As in *Deville*,

Sprague's account of the mediation differs greatly from that of the other participants. (*See* ECF Nos. 31, 33 at 8-10, and 34).

In Sprague's case, there is evidence that she was emotionally upset at the mediation, that Scott grew impatient, and that Krugler continued to work with the participants throughout the day to secure a settlement. Toward the end of the mediation, Krugler met with Sprague without her attorney or anyone else being present and asked her what amount of money, net of any fees and expenses, that she would accept to settle the case. Sprague wrote down that amount on a piece of paper and handed it to her. Krugler presented that settlement amount to Holt and Golightly, and the parties agreed to settle for that amount. There is no evidence that Holt or Golightly ever met with Sprague during the mediation or that they coerced her in any way. Likewise, there is no evidence that Scott, Krugler, or Sprague's husband coerced her into signing the Agreement. Based on a full consideration of the evidence presented at the evidentiary hearing and the arguments and authorities contained in the parties' pleadings, the undersigned finds that Sprague was not coerced into signing the Agreement.

### C. Sprague did Not Sign the Agreement Under Duress.

In addition to coercion, Sprague alleged that she acted under duress when signing the Agreement. (ECF No. 33 at 16-17). To establish duress as an affirmative defense to a contract, Sprague must show that there is (1) "a threat to do some act which the party threatening has no legal right to do," (2) "some illegal exaction or some fraud or deception," and (3) "the restraint must be imminent and such as to destroy free agency without presenting means of protection." *Preston v. Pegasus Solutions, Inc.*, No. 3:04-CV-1924-P, 2006 WL 757960, at *4 (N.D. Tex. Mar. 23, 2006) (internal quotations omitted) (citing *Lee v. Hunt*, 631 F.2d 1171, 1178 (5th Cir. 1980)). Further, "[o]ne who attacks a settlement must bear the burden of showing that the contract he has

16

made is tainted with invalidity." *Del Bosque*, 441 Fed. App'x. at 261 (quoting *Mid-S. Towing Co.*, 733 F.2d at 392). Thus, Sprague bears the burden of proving that the Agreement "was invalid because of fraud, duress, material mistake, or some other defense." *Smith*, 298 F.3d at 441. Mere feelings of pressure or strain experienced in settlement negotiations are not enough to prove duress.

Moreover, an employer has a right to settle employment related claims brought by one of its former employees, and negotiations are an integral part of that settlement process. "These negotiations will often involve 'emotional strain and negotiation pressures,' but by itself this is not enough to overcome the will of a party to a contract." *Preston*, 2006 WL 757960 at *4 (citing *Lee*, 631 F.2d at 1178).

While the Court understands and sympathizes with Sprague's medical condition, and the emotional and physical toll that her treatment had on her, she failed to present sufficient evidence that she acted under duress when signing the Agreement. *Id.* She alleged and testified that she did not understand what she was signing when she entered the Agreement despite recalling many important details about the day of the mediation. (ECF No. 33 at 15-17). She recalled a "lengthy conversation with the 'mediator,' attorney Beth Krugler." (*Id.* at 15). She mentioned that she did not need to be "toughened up" by Scott and that she was "tough enough" after the medical treatments she had received. (*Id.* at 16). Sprague stated that while she is "honest, polite, and kind," this "does not mean that [she is] weak." (*Id.*). Based on these allegations and her testimony at the evidentiary hearing, the undersigned concludes that Sprague understood what she was signing at the mediation and intended to settle the case, though she was unhappy about the settlement.

Also important is that Sprague was not prevented from leaving the mediation. Sprague alleged that she did not understand that she could leave at any time, but Krugler testified that Sprague was free to leave the mediation if she so chose. Sprague's misunderstanding regarding

her ability to leave the mediation does not overcome the fact that she was free to leave and that her free will was not destroyed without means of protection. *Preston*, 2006 WL 757960 at *4-5 (citing *Lee*, 631 F.2d at 1178); *see also F.D.I.C. v. White*, 76 F. Supp. 2d 736, 739 (N.D. Tex. 1999) (rejecting duress claims where "no overt or subtle threats were ever made by the [opposing party] or the mediator") and *Berman v. Kafka*, 518 Fed. App'x. 783, 786 (11th Cir. 2013) (enforcing oral settlement agreement over claims of duress because there were no allegations that the agreement was "the result of coercive acts of the opposing party").

The Agreement states, among other things, that Sprague "KNOWINGLY AND VOLUNTARILY RELEASES, ACQUITS, and FOREVER DISCHARGES Kroger . . . from any and all claims . . . arising out of or relating in any way to any . . . facts . . . occurring prior to the date this Agreement is signed, including, without limitation, this Dispute . . . ." (ECF No. 32 at 7). More importantly, the Agreement states: "SPRAGUE REPRESENTS THAT SHE HAS CAREFULLY READ AND FULLY UNDERST[ANDS] THE PROVISIONS OF THIS AGREEMENT (OR HAD THEM READ AND EXPLAINED TO HER) AND HAS ENTERED THIS AGREEMENT KNOWINGLY, VOLUNTARILY, AND WITHOUT THREAT OR DURESS." (*Id.* at 11). Scott testified that he reviewed the Agreement with Sprague page-by-page before she signed it. The evidence in the record does not suggest otherwise or that any other party threatened Sprague with some impermissible act. *Preston*, 2006 WL 757960 at *4 (citing *Lee*, 631 F.2d at 1178). Finally, the evidence does not prove that some illegal exaction, fraud, or deception occurred to procure Sprague's signature on the Agreement. *Id.*; *see also Smith*, 298 F.3d at 441. Therefore, the undersigned finds that Sprague did not sign the Agreement she entered with Kroger under duress.

### D.  Sprague was Not Extorted to Sign the Agreement.

Sprague alleged that she was extorted by Scott, Krugler, and Holt during the mediation and that this extortion resulted in her signing the Agreement. (ECF No. 33 at 17). Sprague asserted the same "bullying" and "pressuring" by Scott and Krugler in support of this argument. However, the undersigned concludes that this conduct, even if viewed in the light most favorable to Sprague, does not amount to extortion.

Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18. U.S.C. § 1951(b)(2).  Under this definition, Sprague's "bullying" and "pressuring" allegations do not amount to the criminal act of extortion. For instance, Sprague never alleged that any of the mediation participants induced her signature on the Agreement by the "wrongful use of actual or threatened force, violence, or fear." *Id.* Scott testified that his comment about "beating up on her" as part of the settlement negotiations was not meant literally, and Sprague agreed that she understood that. Thus, his actions do not amount to extortion.

Sprague also alleged that Kroger's attorney extorted her because he did not object to her signing the Agreement even though she handwrote that she was signing under duress. (*Id.*). According to Sprague, because Kroger's attorney acquiesced in the face of "duress," he extorted her signature on the Agreement. (*Id.*). The undersigned rejects this argument and conclusion. There is no evidence in the record that Holt or Golightly met with Sprague during the mediation or communicated with her other than through Krugler or Scott. There is no evidence that Holt or Golightly extorted Sprague into signing the Agreement or took any other impermissible action in this case.

### E. Kroger's Request for Attorneys' Fees and Costs Related to the Filing of its Motion to Enforce the Agreement and Motion to Dismiss Should be Denied.

Finally, Kroger requested attorneys' fees and costs related to the filing of its Motion. (ECF No. 31 at 9-10). The Court has discretion to grant or deny Kroger's request for attorneys' fees. *MG Herring Group Inc. v. John Vratsinas Commer. Builders, Inc.*, No. 3:09-CV-1287-L, 2010 WL 1979393, at *4, *7 (N.D. Tex. May 18, 2010). In determining whether Kroger's request for attorneys' fees should be granted, the Court may consider which party caused the continued and avoidable litigation. *Id.* at *7.

Although additional attorneys' fees, court time, and expenses were incurred because of Sprague's refusal to comply with the terms of the Agreement, the undersigned does not find that an award of attorneys' fees or costs incurred in pursuing the Motion against Sprague is warranted. Sprague signed the Agreement below an "under duress" notation. Her "grumbling acceptance" is not enough to prevent the Court from enforcing the Agreement, but the law in the Fifth Circuit and in Texas is not settled on that point. Although Sprague's legal position that she is not bound by the Agreement is unsupported by the facts and the law, the undersigned concludes that awarding Kroger attorneys' fees and costs for filing and pursuing the Motion would be inappropriate. Kroger accepted and signed the Agreement with Sprague's "under duress" notation, and therefore it should bear the expenses that it incurred in seeking a ruling from the Court on whether the Agreement is valid despite that notation. Accordingly, the undersigned concludes that the ends of justice would be best served if Judge O'Connor denied Kroger's request for attorneys' fees and costs incurred in connection with the Motion. In all other respects, he should grant Kroger's Motion to Enforce Settlement Agreement and Motion to Dismiss. (ECF No. 31).

## IV.   CONCLUSION

After considering the pleadings, evidence, and applicable law, the undersigned recommends that United States District Judge Reed O'Connor **GRANT IN PART** Kroger's Motion to Enforce Settlement Agreement and Motion to Dismiss (ECF No. 31), enforcing the Agreement executed by Sprague and Kroger on December 18, 2018, ordering distribution of the settlement funds provided in the Agreement to Sprague, and dismissing Sprague's claims **WITH PREJUDICE**, with each party bearing the costs and attorney's fees incurred by that party.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on **February 5**, **2019**.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE